UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE MUCKY DUCK, INC., A FLORIDA CORPORATION; AND LUCKY DUCK RE LLC, A FLORIDA LIMITED LIABILITY COMPANY;

Plaintiffs,

v.

Case No. 2:26-cv-123-KCD-NPM

CAPTIVA EROSION PREVENTION DISTRICT, A FLORIDA POLITICAL SUBDIVISION FORMED UNDER CHAPTER 161, FLORIDA STATUTES; AND CAPTIVA EROSION PREVENTION DISTRICT BOARD OF COMMISSIONERS,

Defendants,
_______________________________________/

**ORDER**

The Mucky Duck has served food and drinks on Captiva Island for over a generation. By most accounts, the food is good. *See* https://www.yelp.com/biz/the-mucky-duck-captiva (last visited Sept. 15, 2026). But the main draw has been the view:



(Doc. 40 at 7.)[1] That changed in November 2025. Patrons now see a 12-foot-high mountain of sand:



(*Id.*) The Captiva Erosion Prevention District and its Board of Commissioners (collectively, "the District") allegedly built the massive dune to protect the island from tropical storms.

Plaintiffs—The Mucky Duck, Inc., which operates the restaurant, and Lucky Duck RE LLC, which owns the underlying land—say the District overstepped. The dune not only erased the waterfront views, it also severed their littoral rights and physically occupied a swath of private land. So Plaintiffs have sued. (Doc. 1.) The latest complaint is a sprawling twenty-two-count pleading that raises a host of constitutional and state-law claims. (Doc. 40.)

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

The District seeks dismissal. (Doc. 49.) It argues that background principles of Florida property law foreclose Plaintiffs' constitutional claims. And it insists the remaining allegations fail for lack of standing or failure to state a plausible claim. As explained below, the District's Motion is **GRANTED in part** and **DENIED in part**.

## I. Background

At this stage of the litigation, the Court accepts the complaint's factual allegations as true and draws all reasonable inferences in Plaintiffs' favor. The Mucky Duck opened in 1976, but the building dates back to 1924. (Doc. 40 ¶ 13.) It is "one of the oldest, most historically-significant buildings in Lee County and Captiva Island." (*Id.* ¶ 12.) To that end, the County has designated the site as a "Historic Resource." (*Id.* ¶ 14.)

When the land was originally platted in 1912, its western boundary was the Gulf of Mexico. (*Id.* ¶ 10.) Over the following decades, a series of plats and easements were recorded that now control ownership and attendant rights in the property. (*Id.* ¶¶ 31-33, 232.) Those documents are discussed where pertinent below.

The District is a Florida political subdivision tasked with beach and shore preservation. (*Id.* ¶¶ 20-25; Fla. Stat. § 161.36.) Under Florida law, it is authorized to maintain restored beaches by replacing sand and providing storm protection. (*See* Fla. Stat. §§ 161.28, 161.36, 161.088.) To understand

how that power interacts with adjoining landowners, like at issue here, a detour into the mechanics of Florida's coastal-restoration framework is helpful.

Recognizing that beach erosion poses a serious threat to the economy and general welfare, the Florida Legislature enacted the Beach and Shore Preservation Act. *See* Fla. Stat. §§ 161.011-161.45. It allows the State to manage and restore critically eroded beaches, declaring it a "necessary governmental responsibility" to step in and fund such projects. *Id.* § 161.088. But rebuilding a beach physically alters the shoreline, which inevitably collides with adjoining property rights.

To manage that collision, the Act creates a specific legal framework. *See Walton Cnty. v. Stop Beach Renourishment, Inc.*, 998 So. 2d 1102, 1108 (Fla. 2008). When a local government asks for restoration funding, it first surveys the shoreline to locate the existing mean high-water line. Fla. Stat. § 161.141. Guided by that survey, the extent of the erosion, and the engineering needs of the project, the State draws an "Erosion Control Line." *Id.* § 161.161(4), (6). Once recorded, the ECL replaces the naturally fluctuating water line as the fixed property boundary. *Id.* § 161.191; *Walton Cnty.*, 998 So. 2d at 1108. The State takes title to the restored beach seaward of the line, while the private owner retains everything landward. From that

point on, the common-law rules of accretion and erosion no longer move the property line. Fla. Stat. § 161.191(2).

Important here, setting the ECL does not erase the upland owner's waterfront rights. The Act expressly preserves traditional littoral rights—including "ingress, egress, view, boating, bathing, and fishing." *Id.* § 161.201. It also forbids the State from erecting structures seaward of the ECL unless they are required to prevent erosion. *Id.* "Section 161.141 further declares that the State has no intention to extend its claims to lands not already held by it or to deprive any upland or submerged land owner of the legitimate and constitutional use and enjoyment of his or her property." *Walton Cnty.*, 998 So. 2d at 1108.

Finally, "[i]f an authorized beach restoration, beach nourishment, and erosion control project cannot reasonably be accomplished without the taking of private property, the taking must be made by the requesting authority by eminent domain proceedings." Fla. Stat. § 161.141.

Turning back to the facts here, the State formally recorded an ECL for the area in 1983. (Doc. 35-10.) Five years later, a predecessor in interest to Plaintiffs executed an "Easement Agreement." (Doc. 35-8.) That recorded agreement purports to grant the District a perpetual right to enter the Mucky Duck's property to enlarge and maintain the beach, prevent erosion, and take any additional acts necessary for its beach restoration project. (*Id.*)

For decades, the ECL and easement were non-issues. But in 2025, the District rolled out a new beach restoration project designed to protect upland homes and infrastructure from tropical storms. (Doc. 40 at 15.) The District did not just expand the beach to prevent erosion. As mentioned, it constructed an artificial dune right behind the Mucky Duck.

The core of this dispute is about where that dune sits. The District claims the project falls within the bounds of its lawful permit and the recorded easement. Plaintiffs say otherwise, claiming the dune was built almost entirely on private property east of the ECL. To Plaintiffs, that was not just an unlawful taking, it was the total destruction of their constitutionally protected waterfront rights. Apart from the geography, Plaintiffs also attack the project's legal foundation. They contest the underlying state and federal permits, challenge whether the restoration project was lawfully executed, and dispute the easement the District claims to hold.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* The question at this stage is not whether the plaintiff will ultimately win, but simply whether the complaint can proceed into discovery.

At this starting gate, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). That benefit of the doubt, however, has limits. The court is not bound to accept legal conclusions dressed up as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Put simply, the plaintiff must tell a factual story that makes the defendant's liability plausible, not just point a finger and recite the law.

"We use a two-step process to determine whether a claim survives Rule 12(b)(6) scrutiny." *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1346–47 (11th Cir. 2025). "At the outset, we determine what must be pled for each cause of action. . . . Then, we consider the well-pleaded factual allegations . . . to determine whether they plausibly suggest an entitlement to relief." *Id.*

## III. Discussion

The District's motion does not take a traditional route. It does not attack the complaint as a whole, nor does it march through the individual

counts. Instead, the District lobs a series of broad, cross-cutting arguments aimed at various clusters of claims. To keep things manageable, the Court will follow the same format and address each argument under the caption used by the District.

### A. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED LITTORAL RIGHTS, AND THE BUSINESSOWNER CANNOT ASSERT LANDOWNER'S RIGHTS

The District first takes aim at the Mucky Duck. Because littoral rights attach only to the upward land, the District argues the restaurant has no compensable property interest that could have been taken. And because the complaint does not attach a formal lease or allege terms "conveying the alleged Landowner's littoral rights to The Mucky Duck," the District insists the restaurant must be dismissed from the takings claims (Counts 1, 2, 3, and 20). (Doc. 49 at 5.)

For starters, the District takes too narrow a view of the Takings Clause. The Constitution protects more than just fee simple titles. A leasehold or possessory interest *is* property under the Fifth Amendment. *See Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 303 (1976) ("It has long been established that the holder of an unexpired leasehold interest in land is entitled, under the Fifth Amendment, to just compensation for the value of that interest when it is taken upon condemnation by the United States."). "[C]ompensation is mandated when a leasehold is taken and the government

occupies the property for its own purposes, even though that use is temporary." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002).

"Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules . . . from an independent source such as state law." *Whitaker v. Perdue*, No. 4:06-CV-0140-CC, 2008 WL 11627774, at *3 (N.D. Ga. Sept. 30, 2008). In Florida, a leasehold is a compensable property right. *See, e.g.*, *Trump Enters., Inc. v. Publix Supermarkets, Inc.*, 682 So. 2d 168, 169 (Fla. Dist. Ct. App. 1996). What is more, a lease of waterfront property carries the attendant riparian and littoral rights with it. *See* Fla. Stat. § 253.141(1) ("Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland.").

The complaint alleges that the Mucky Duck is in rightful possession of the upland property. Perhaps discovery will uncover a lease provision that somehow severs or limits the attendant waterfront rights. But on the current record, we have no such evidence. Absent proof to the contrary, the restaurant's possession of the property is sufficient to confer standing to pursue the takings claims. *See, e.g.*, *Rock Place II, Inc. v. Sanitary & Improvement Dist. No. 596*, No. 8:20-CV-304, 2022 WL 4608274, at *5 (D.

Neb. Sept. 30, 2022); *Bd. of Trs. of the Internal Imp. Tr. Fund v. Sand Key Assocs., Ltd.*, 512 So. 2d 934, 936 (Fla. 1987) ("[W]e [have] said these riparian or littoral rights are property rights that may be regulated by law, but may not be taken without just compensation and due process of law.").

The District also faults Plaintiffs for not attaching the restaurant's lease or pleading the "leasehold terms." (Doc. 49 at 5.) Without those specifics, the District concludes, the restaurant lacks a plausible property interest to bring a takings claim. (*Id.*) But that asks too much of a pleading. The Federal Rules of Civil Procedure do not demand evidentiary detail at this stage. Rule 8 requires plausibility, not proof. Plaintiffs have alleged that the restaurant holds a possessory interest in the upland property. That is enough to infer that the restaurant holds the waterfront rights asserted in its takings claims. If the actual lease tells a different story, the District can present it at summary judgment.

### B. THE PLATS, DEEDS, AND SURVEYS PLEAD NO METES AND-BOUNDS TITLE TO ANY WATER BOUNDARY, AND NONE OF THEM SHOWS AN ECL OR MEAN HIGH-WATER MARK

The District next focuses on the property lines. Because the complaint describes the land using century-old platted lots rather than a modern metes-and-bounds deed extending to the water, the District claims Plaintiffs have not shown they own the waterfront. (Doc. 49 at 6.) The District also attacks the survey Plaintiffs attached to the complaint, correctly noting that a

surveyor's drawing cannot legally adjudicate title or create littoral rights under Florida law. (*Id.* at 6.) From there, the District concludes that Plaintiffs have no basis to claim the newly-constructed dune sits on their land. (*Id.* at 7.)

Once again, the District demands trial-level proof at the pleading stage. This is a motion to dismiss, not a bench trial to quiet title. For their claims to survive, Plaintiffs need not prove the exact boundary lines. They must only plausibly allege that their property extends to the relevant waterfront boundary—which, since 1983, is the ECL. The complaint clears that bar. Plaintiffs say the original plats set the Gulf of Mexico as the western boundary, naturally carrying littoral rights. (Doc. 40 ¶ 10.) The boundary line was then reset with the 1983 ECL. (*Id.* ¶ 34.) Finally, they allege—and use the survey to illustrate—that the District erected the obstructive dune on *their side* of the ECL. (Doc. 35-10.)

Whether Plaintiffs' chain of title can withstand scrutiny is for another day. The District is free to marshal its own experts and historical deeds at summary judgment to prove the land stops short of the ECL. But at this stage, the Court must accept the complaint's plausible property descriptions as true.

### C. AVULSION AND THE §161 ECL FRAMEWORK FORECLOSE THE ACCRETION, CONTACT, AND BOUNDARY-MOVEMENT THEORIES

The District next argues that Plaintiffs have no valid property interest in sudden additions of sand (avulsion) or any post-1983 build-up (accretions). Because the 1983 ECL permanently froze the property line, the State owns everything seaward of that boundary. Therefore, the District concludes, Plaintiffs cannot build a takings claim on a loss of "accreted dry land" or an expectation of perpetual contact with the water. (Doc. 49 at 8.)

As a summary of Florida's statutory framework, the District is spot on. But as a basis for dismissal, not so much. The District is simply arguing a different case. Plaintiffs are not trying to claim ownership of newly accreted sand seaward of the ECL. Nor are they asking the Court to rewrite the rules of avulsion or to grant them contingent future interests in state-owned land. Instead, the complaint alleges something much simpler and direct: the District built a 12-foot-high wall of sand *landward* of the ECL, squarely on Plaintiffs' property. And in doing so, the District cut off Plaintiffs' attendant littoral rights.

If the District had built its dune seaward of the ECL, the doctrines of avulsion and accretion would be pertinent. But at this point, the Court must accept Plaintiffs' geography. And taking the complaint as true, the District physically occupied the upland property. That is a plausible taking. *See, e.g.*,

*Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 322 ("[W]hen the government appropriates part of a rooftop in order to provide cable TV access for apartment tenants, or when its planes use private airspace to approach a government airport, it is required to pay for that share no matter how small.").

### D. THE LITTORAL VIEW AND VISIBILITY COUNTS FAIL AS A MATTER OF FLORIDA LAW

Plaintiffs allege in several counts that the District took their constitutionally-protected littoral right of view. (Doc. 40, Counts 1, 4, 5.) The District does not seem to dispute the baseline premise that Florida law recognizes an upland owner's right to an unobstructed view of the adjoining waters. *See, e.g.*, *Bd. of Trs. of the Internal Imp. Tr. Fund*, 512 So. 2d at 936 ("Riparian and littoral property rights consist not only of the right to use the water shared by the public, but include . . . the right to an unobstructed view of the water[.]"). But the District argues Plaintiffs' claims fail anyway.

First, like above, the District says "no plaintiff has pleaded the qualifying upland, deeded title extending to the MHWL to which a littoral view right attaches." (Doc. 49 at 10-11.) Second, Plaintiffs cannot plead a loss of view given their allegation that the dune sits on private land. (*Id.* at 11.) "An earthwork allegedly on one's own land presents, at most, a physical-invasion or easement-scope dispute; it is not an obstruction erected on

sovereign [property].” (*Id.*) And finally, the District attempts to downgrade Plaintiffs’ injury from a protected waterfront right to a mere loss of “commercial visibility.” (*Id.*)

None of these arguments move the needle. Take the title issue first. As already explained, Plaintiffs have plausibly alleged that their deeded property extends to the ECL and carries littoral rights. At the pleading stage, the Court must accept that reality. The District cannot wave away Plaintiffs’ claim by demanding summary-judgment-level proof in a motion to dismiss.

As for the District’s position that Plaintiffs are confined to a physical takings claim because the dune allegedly sits on their land, that ignores how the Federal Rules of Civil Procedure work. Rule 8 expressly permits a claimant to plead alternative, and even inconsistent, theories of relief. Fed. R. Civ. P. 8(d)(2). Plaintiffs are free to argue that the dune is an unlawful physical occupation, and, in the alternative, the structure unconstitutionally severs their littoral right of view if lawfully placed. That flexibility is especially appropriate here because the District claims an easement gave it the legal right to build the dune where it sits. Pleading in the alternative is a standard tool, not grounds for dismissal. *See, e.g.*, *Silverio v. Buffalo Rock Co.*, No. 2:09-CV-01914-TMP, 2010 WL 11614793, at *2 (N.D. Ala. Apr. 1, 2010).

Finally, the District cannot recast the complaint as raising only commercial injuries. True enough, Florida law does not guarantee a business a pristine backdrop or uninterrupted roadside visibility. And if Plaintiffs were only complaining about the restaurant's aesthetics, the District might have a point. But Plaintiffs allege a complete physical obstruction of their littoral right to look *from* their upland property *out over* the Gulf. That is a cognizable injury under Florida law. *See, e.g.*, *Lee Cnty. v. Kiesel*, 705 So. 2d 1013, 1015 (Fla. Dist. Ct. App. 1998) ("Owners of uplands along navigable waters enjoy common law riparian rights, one of which is the right to an unobstructed view over the water to the channel.").

Ultimately, whether the sand dune amounts to a compensable obstruction is not a question that can be answered today. The inquiry is inherently factual, turning on the specific circumstances on the ground. *See, e.g.*, *Geise v. Fleck*, 433 So. 3d 931, 954 (Fla. Dist. Ct. App. 2026). Plaintiffs allege that the District erected a barrier that suffocates their ocean view. Absent some other defense, which has not yet been presented, those facts plead an intrusion on their littoral rights. *See Kiesel*, 705 So. 2d at 1016.

### E. NO PHYSICAL APPROPRIATION, CATEGORICAL DEPRIVATION, OR PENN CENTRAL TAKING IS PLAUSIBLY PLEADED

The District next disputes the various takings claims brought under the Fifth Amendment. According to the District, because it did not seize the

building or evict the owners, Plaintiffs have not alleged a true appropriation. (Doc. 49 at 13.) Not so.

When the government physically occupies private property, it is a per se taking, no matter how small the footprint or whether the rest of the property remains open. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) ("[W]hen the physical intrusion reaches the extreme form of a permanent physical occupation, a taking has occurred."). Plaintiffs allege the District erected a sand dune *on their property*. That is a physical occupation with Fifth Amendment ramifications. *See Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 322. And even if the dune's footprint falls outside Plaintiffs' property, the alleged deprivation of their littoral rights independently constitutes a physical taking under Florida law. *Kiesel*, 705 So. 2d at 1015.

The District devotes several paragraphs to arguing that Plaintiffs have not shown a regulatory taking because they can still operate the restaurant. (Doc. 49 at 14.) But Plaintiffs are not alleging that a government regulation went "too far" and incidentally diminished their property value. (*Id.*) They allege a direct, physical appropriation of their land and the severance of their littoral rights. Because the complaint unequivocally pleads a physical taking, the District's arguments concerning the elements and balancing tests of a regulatory taking are beside the point.

The District also complains that Plaintiffs multiplied a single grievance into six overlapping constitutional claims, risking an unwarranted double recovery. (Doc. 49 at 13.) It is true that Counts 1 through 6 slice the same injury—construction of the dune—into various deprivations like lost view, lost access, and lost visibility. But as noted, the Federal Rules give claimants wide latitude to plead overlapping theories. That is especially appropriate here, where the District claims there was no physical invasion. If Plaintiffs ultimately prevail, the Court can prevent any double recovery. For example, as between the two Plaintiffs, Florida law provides a scheme for allocating the alleged harm. *See Trump Enters., Inc.*, 682 So. 2d at 170 ("In apportioning condemnation proceeds the court should divide the sum equitably between the parties to reflect the respective values of the encumbered fee and the leasehold interest.").

**F. COUNT 20 IS, AT MOST, A NARROW LANDOWNER PHYSICALLOCATION CLAIM**

Turning to Plaintiffs' takings claim at Count 20, the District argues it lacks "the precision a littoral inverse takings claim requires." (Doc. 49 at 15.) The District faults Plaintiffs for describing the invasion in approximate terms rather than providing exact metes-and-bounds boundaries. (*Id.* at 14-15.)

Like a broken record, the District is again demanding more proof than required at this stage. Plaintiffs need not include GPS coordinates in the

complaint. Alleging that the District erected a sand dune within their private property is enough here. The exact dimensions of the dune, and where it sits relative to the property lines, are textbook factual disputes for discovery. What is more, Plaintiffs *have* provided this type of evidence. The complaint includes a map that shows the dune resting almost entirely on Plaintiffs' side of the ECL. (Doc. 35-10.)

The District separately faults Plaintiffs for failing to plead whether the dune falls within the recorded shoreline-restoration easement. (Doc. 49 at 15.) But the easement is akin to an affirmative defense, which Plaintiffs dispute elsewhere in the complaint. If the District believes its easement authorizes the conduct here, it can marshal the evidence and make that argument at summary judgment. Plaintiffs were not required to anticipate and defeat this defense in the complaint.

**G. THE PERMIT, ULTRA VIRES, AND ECL STATUTORY COUNTS FAIL FOR LACK OF ANY PRIVATE RIGHT OF ACTION**

The District next turns its attention to Counts 7, 8, and 9. In these claims, Plaintiffs allege that the District violated the conditions of its environmental permits—issued by the Army Corps of Engineers and the Florida Department of Environmental Protection—and the "enabling legislation." (Doc. 40 at 39-45.) According to the District, Plaintiffs lack a private right of action to enforce these regulatory instruments.

Regardless of the District's argument, the Court cannot decipher what is being alleged in these counts. Plaintiffs fail to specify which part of the permits, or the enabling legislation, the District supposedly violated. And neither side does anything to explain how these claims are properly before the Court. The briefing is entirely conclusory, and the Court declines to do the legwork to understand what (if anything) can survive. *See United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). Accordingly, the Court will dismiss Counts 7, 8, and 9 with leave to amend so Plaintiffs can allege the factual content necessary to understand what was violated. Before doing so, however, they are directed to review Fla. Stat. § 161.212 and how it might affect these claims.

The District also challenges Counts 21 and 22 in this section. Through these claims, Plaintiffs ask the Court to declare that the District had no authority under Florida law to cross the ECL and build the dune. (*See* Doc. 40 ¶ 340 ("The defendants had no right or authority to physically invade the Historic Property or build the illegal 12.0' high, 82' deep artificial barrier on the Historic Property.")). But for starters, the law generally *does* allow the government to intrude on private property for public projects—it just has to pay for the privilege. *See* Fla. Stat. § 161.141 ("If an authorized beach

restoration, beach nourishment, and erosion control project cannot reasonably be accomplished without the taking of private property, the taking must be made by the requesting authority by eminent domain proceedings."). Given that constitutional mechanism, it appears Plaintiffs have an adequate remedy at law, making these standalone declaratory judgment claims unnecessary. *See, e.g.*, *Bolin v. Story*, 225 F.3d 1234, 1243 (11th Cir. 2000).

Like the permit counts above, the Court is not entirely sure what distinct relief Plaintiffs are seeking here. These later claims seem unnecessary and read like simply repackaged Fifth Amendment takings claims dressed up in declaratory judgment garb. Counts 21 and 22 are thus dismissed without prejudice. Plaintiffs are granted leave to amend if they can articulate a viable, independent basis for declaratory relief that does not just duplicate the takings claims.

### H. THE DUE PROCESS AND EQUAL PROTECTION COUNTS REPACKAGE THE SAME TAKINGS THEORY

In Count 10, Plaintiffs allege the District violated their due process rights by erecting the offending sand dune without proper procedures. Count 11 raises both substantive due process and equal protection, arguing the District treated Plaintiffs' property worse than other parcels on Captiva Island. The District pushes back on both fronts, arguing these are just

repackaged takings claims that do not belong under the Fourteenth Amendment. (Doc. 49 at 16-17.)

Plaintiffs' procedural due process claim fails for several reasons. To begin, it improperly commingles three distinct causes of action—one under the federal constitution and two under Florida law—into a single count. That alone is a pleading defect. *See, e.g.*, *Merritt v. Knowles*, No. 6:24-CV-1365-JSS-DCI, 2026 WL 617427, at *4 (M.D. Fla. Mar. 5, 2026). State and federal due process claims carry distinct requirements that cannot be lumped together. Indeed, a federal procedural due process claim cannot get off the ground unless a plaintiff shows an absence of adequate state procedures to remedy the alleged deprivation. *See Flagship Lake Cnty. Dev. No. 5, LLC v. City of Mascotte, Fla.*, 559 F. App'x 811, 815 (11th Cir. 2014).

On the substantive side, Florida law provides a robust statutory framework for initiating and challenging beach renourishment projects. *See* Fla. Stat. §§ 161.011-161.45. Yet Plaintiffs fail to articulate what part of that regime the District ignored. While they do reference a lack of "sufficient and timely notice" and their "rights to give testimony and present relevant evidence at hearings," they neglect to tie those generalized grievances to any specific law. It is Plaintiffs' burden to identify what process was due and how it was denied. The Court is not going to scour Florida law to fill in the gaps or construct a viable claim on their behalf.

Count 11 fares no better. Like above, Plaintiffs attempt to press two independent constitutional claims: substantive due process and equal protection. "This continued combination of various legal theories into each cause of action . . . renders the amended complaint [a] shotgun pleading." *Sizemore v. Collins*, No. 6:24-CV-1562-AGM-LHP, 2026 WL 1071574, at *5 (M.D. Fla. Jan. 26, 2026). It also seems Plaintiffs gave little thought to the substance. Their due process theory, for instance, is just a takings claim regurgitated. *See Villas of Lake Jackson, Ltd. v. Leon Cnty.*, 906 F. Supp. 1509, 1516 (N.D. Fla. 1995). Given these fundamental deficiencies, Counts 10 and 11 cannot proceed. Plaintiffs are directed to evaluate how any of these constitutional theories align with the actual facts before repleading.

## I. THE NUISANCE COUNTS FAIL, AND THE TRESPASS AND EASEMENT COUNTS MUST BE LIMITED

In Counts 12 and 13, Plaintiffs allege that the sand dune constitutes a private nuisance, creating a substantial and unreasonable interference with the use and enjoyment of their property. The District makes several arguments in response: the interference is merely aesthetic and not "substantial" like smoke or noise; the project cannot be "unreasonable" because it is a permitted, statutorily authorized hurricane-protection measure; the damages are the result of recent hurricanes; and the claims are duplicative of the takings counts.

None of these arguments are enough to trigger dismissal. First, the District drastically downplays the alleged interference. Plaintiffs are not complaining about a minor aesthetic blemish. *See Beckman v. Marshall*, 85 So. 2d 552, 555 (Fla. 1956) ("The law of private nuisance is a law of degree; it generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances, and whether there is 'an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort, and not merely a tendency to injure."). They allege a 12-foot-high, 82-foot-deep wall of sand has severed their visual and physical connection to the Gulf. That level of intrusion is enough for now. *Roebuck v. Sills*, 306 So. 3d 374, 378 (Fla. Dist. Ct. App. 2020). And contrary to the District's framing, a compensable nuisance does not apparently require a recurring physical irritant like smoke or vibration. *See Jones v. Trawick*, 75 So. 2d 785, 788 (Fla. 1954).

The District provides no law or source of authority for the remarkable position that it cannot erect a private nuisance. *Cf. Fla. E. Coast Props., Inc. v. Metro. Dade Cnty.*, 572 F.2d 1108, 1112 (5th Cir. 1978). And without some substantive argument, the Court declines to hold that a general statutory mandate to combat beach erosion grants the District blanket immunity from tort liability. Whether the dune qualifies as a nuisance requires balancing the utility of the District's conduct against the gravity of the harm to Plaintiffs.

That is a notoriously fact-intensive inquiry that cannot be done on this record.

Finally, the Court rejects the District's ongoing complaint that these counts are improperly duplicative. As stated, Federal Rule of Civil Procedure 8(d)(2) permits alternative pleading. Should Plaintiffs prevail, the Court can police the damages phase to prevent double recovery for the same harm. But overlapping legal theories do not render a complaint defective at this point. The nuisance counts thus survive.

### J. PLAINTIFFS' ATTORNEYS' FEE DEMAND SHOULD BE DISMISSED OR STRICKEN

The Court need not spend long here. "Defendant may well be correct, but in federal court, there is no special pleading requirement for attorneys' fees." *Caulfield & Wheeler, Inc. v. Marsh & McLennan Agency, LLC*, No. 23-CV-81407, 2024 WL 337196, at *3 (S.D. Fla. Jan. 29, 2024). A request for fees is just that—a request. Striking it now serves little purpose. Federal courts generally refrain from pruning pleadings based on speculative entitlement to fees, preferring to address the issue when the prevailing party actually moves for them. *See* Local Rule 7.01. Should Plaintiffs ultimately seek attorney's fees, the District remains free to challenge the request at that time.

### K. AT MINIMUM, THE COURT SHOULD REQUIRE PLAINTIFFS TO SEPARATE CLAIM, PLAINTIFF, PROPERTY INTEREST, AND REMEDY

To conclude, the District argues that if the complaint survives, it should be narrowed to cure any procedural defects. For instance, the complaint repeatedly uses the collective "Plaintiffs" as though the landowner and restaurant are interchangeable. Yet other claims are brought by only the "Landowner." (Doc. 49 at 21.)

The Court generally agrees. Plaintiffs appear to have given little thought to the interaction between their claims and Florida law. This shotgun-style approach—throwing a bunch of claims against the wall to see what sticks—obscures the actual boundaries of the dispute. The Court has finite judicial resources and will not spend them unpacking the complaint, separating the plaintiffs, or doing the legal work on their behalf. For any subsequent pleading, Plaintiffs must identify, count by count, which party is asserting the claim, the exact property or legal interest at issue, the supporting facts, and the precise remedy sought. Beyond these structural fixes, Plaintiffs are directed to give careful consideration to which legal claims are actually viable here. Throwing a dozen different constitutional and statutory labels at what is fundamentally a takings claim is not a winning strategy, and the Court expects any future pleading to reflect a more deliberate, legally sound approach.

## IV. Conclusion

Plaintiffs have pled the core facts needed to contest whether the District violated their rights by constructing the sand dune. But the complaint is unwieldy, pressing several claims supported by conclusory language rather than underlying facts. The Court expects any new complaint to cure these deficiencies and present a focused, properly structured pleading that accurately reflects the boundaries of this dispute. Accordingly, it is now **ORDERED**:

1. The District's Motion to Dismiss (Doc. 49) is **GRANTED IN PART AND DENIED IN PART**. Counts 7, 8, 9, 10, 11, 21, and 22 **ARE DISMISSED WITHOUT PREJUDICE**. Plaintiffs have 14 days to file an amended complaint addressing all the deficiencies noted above. Failure to do so will result in this case being dismissed in its entirety without further notice.

**ENTERED** in Fort Myers, Florida on September 15, 2026.

Kyle C. Dudek
United States District Judge